OPINION
{¶ 1} Defendant-appellant Carlos Ball appeals his conviction and sentence from the Licking County Court of Common Pleas on one count of trafficking in crack cocaine. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On August 5, 2005, the Licking County Grand Jury indicted appellant on one count of trafficking in crack cocaine in violation of R.C. 2925.03(A)(1)(C)(4)(c), a felony of the fourth degree, and one count of complicity to commit trafficking in crack cocaine in violation of R.C. 2925.03(A)(1)(C)(4)(c) and R.C. 2923.03(A)(1) and/or (A)(2) or (A)(3), also a felony of the fourth degree. Both counts of the indictment contained a specification seeking forfeiture of $626.00 in cash. At his arraignment on August 8, 2005, appellant entered a plea of not guilty to the charges.
 {¶ 3} Subsequently, a jury trial commenced on September 6, 2005. The following testimony was adduced at trial.
 {¶ 4} Detective Douglas Bline, who is employed by the City of Newark, testified that he was assigned to the Central Ohio Drug Enforcement Task Force. On December 3, 2004, Detective Bline set up a controlled buy from appellant using a confidential informant named James Wood. Wood, according to the detective, agreed to be a confidential informant to "work off [two crack cocaine trafficking] charges that he was facing." Trial Transcript at 83. Detective Bline testified that appellant was known to Wood.
 {¶ 5} Detective Bline further testified that the controlled buy was to take place at the Elks Club and would involve the purchase of an "eight ball" of crack cocaine from appellant for $160.00. At approximately 7:22 p.m., Wood, while in the presence of Detective Bline, used the detective's cell phone to call appellant and set up the buy. The phone call was recorded. At trial, the detective testified that he recognized appellant's voice over the telephone since he had talked with appellant at least three times previously.
 {¶ 6} Detective Bline then drove Wood, who was wired with a transmitter with both audio and visual capacity and provided with $160.00 of buy money, to an area near the Elks Club. According to Detective Bline, Wood then walked approximately 50 to 75 feet to the door of the Elks Club while the detective was maintaining surveillance. Shortly thereafter, after appellant did not appear, Wood turned around and came back to the detective's car. Wood then made another call to appellant at approximately 7: 30 p.m., using the detective's cell phone, to let appellant know he was there. This second call also was recorded.
 {¶ 7} Detective Bline testified that Wood then exited the detective's car again and walked back to the Elks Club. The following testimony was adduced when the detective was asked what he observed:
 {¶ 8} "I watched the informant [Wood] get out of the car. He walked down the alley, down to — I'm going to say, it's like three car-lengths, two car-lengths away from the front door, west of the front door, then basically turn and face towards the Elks, and then I could hear the CI [confidential informant] make contact with an individual there. I could — it was dark. I could tell it was a black male. I could not make out any type of identification on the person. You can hear — you can hear thanks or good luck, something along those lines, and then immediately once the CI and the target had met, the informant then turned around and came directly back to my vehicle as I watched all this occur." Trial Transcript at 99. When Wood returned to the detective's car at approximately 7:32 p.m., he handed the detective the crack cocaine that he had purchased from appellant. Testimony was adduced at trial that the crack cocaine weighed 3.09 grams. According to the detective, the amount of crack cocaine was consistent with a $160.00 purchase. Detective Bline also testified that the whole operation lasted approximately one half hour. Wood was released at 7:36 p.m. after being searched and after giving a written statement.
 {¶ 9} Later the same evening, Detective Bline arrested appellant. While arresting him, the detective found $120.00 and a cell phone on appellant's person. Shortly after the arrest, the detective used his cell phone at approximately 8:32 p.m. and called the number previously used by Wood on two occasions that same evening to call appellant. The cell phone recovered from appellant's person then began to ring. The call history for Detective Bline's cell phone showed that, on December 3, 2004, a total of three calls were made to appellant's phone from the detective's cell phone.
 {¶ 10} James Wood, the confidential informant, also testified at trial. Wood testified that, in November of 2004, he entered into an agreement with the Central Ohio Drug Enforcement Task Force agreeing to work with the task force and its officers. Wood, when questioned, admitted that, prior to entering into the agreement, he had been arrested for trafficking in crack cocaine on two occasions and that he faced up to five years in prison with respect to one of the charges and up to 18 months in prison on the other. As part of his agreement, the Central Ohio Drug Enforcement Task Force agreed to reduce the charges if Wood successfully completed the contract. Wood also admitted that he previously had been convicted of aggravated arson and had served eight and a half years in prison for such conviction.
 {¶ 11} Wood further testified that he knew appellant prior to December 3, 2004, and had met him 15 to 20 times. Wood testified that he had talked to appellant over the telephone 10 to 15 times and knew appellant's voice.
 {¶ 12} According to Wood, on December 3, 2004, he was searched and wired by Detective Bline. Wood testified that he made a couple of calls to appellant using a number for appellant that he had previously used in the past. When asked who actually made the phone call, Wood testified that Detective Bline dialed the number after Wood told him what number to dial. After the detective handed the telephone to Wood, Wood arranged to purchase an eight ball of crack cocaine, which was approximately 3.0 grams, from appellant for $160.00. Wood further testified that when he first approached the Elks Club, appellant was not there. Once again, Wood had Detective Bline dial the same number. During this second conversation, appellant told Wood that he would be right outside. Wood testified that he then exited the car and walked down to the Elks. According to Wood, appellant then handed him the eight ball and Wood handed appellant the $160.00. Wood then returned to the detective's car where he was searched, and after giving a written statement, was released from service.
 {¶ 13} At the conclusion of the State's case, appellant made a Crim.R. 29 motion for judgment of acquittal. The trial court granted appellant's motion with respect to the charge of complicity to commit trafficking in crack cocaine, but overruled appellant's motion with respect to the charge of trafficking in crack cocaine.
 {¶ 14} Thereafter, the jury, on September 7, 2005, found appellant guilty of trafficking in crack cocaine. The jury further found that the amount of crack cocaine involved "did exceed one gram but did not exceed five grams, to wit: 3.09 grams of Crack Cocaine."[1] As memorialized in a Judgment Entry filed on September 5, 2005, the trial court sentenced appellant to ten months in prison.
 {¶ 15} Appellant now raises the following assignments of error on appeal:
 {¶ 16} "I. THE TRIAL COURT SHOULD HAVE DISMISSED THE CASE WHEN REQUESTED BY DEFENSE COUNSEL AT THE CONCLUSION OF THE STATE'S CASE FOR LACK OF PROBABLE CAUSE.
 {¶ 17} "II. THE TRIAL COURT SHOULD HAVE DECLARED A MISTRIAL AFTER THE STATE MISBETRAYED [SIC] AN ISSUE BEFORE THE JURY."
 I {¶ 18} Appellant, in his first assignment of error, argues that the trial court erred in overruling his Crim.R. 29 motion for judgment of acquittal at the close of the State's case. We disagree.
 {¶ 19} Criminal Rule 29(A) requires a trial court, upon motion of the defendant, to enter a judgment of acquittal of one or more offenses charged in an indictment if the evidence is insufficient to sustain a conviction of the offense or offenses. However, a trial court may not grant an acquittal by authority of Crim. R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. On appeal of the denial of a Crim. R. 29(A) motion, the "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Williams, 74 Ohio St.3d 569, 576,660 N.E.2d 724, 1996-Ohio-91, citing State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 20} Appellant, in his first assignment of error, specifically argues that there was insufficient evidence that he was the person who sold the crack cocaine to Wood. Appellant notes that the video recording of the controlled buy does not show appellant and that Detective Bline did not actually see the sale take place. Appellant also notes that, in the audio recording of the buy, Wood refers to the person with whom he is dealing as "Jose", a name that appellant did not use and was not known by. Based on the foregoing, appellant argues that "the only thing the jury had to go on was the testimony of James F. Wood", who appellant contends was not a credible witness due to his criminal history and drug and alcohol addiction/problems.
 {¶ 21} However, because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1. Clearly, the jury, as trier of fact, found Wood to be a credible witness when he testified that appellant was the person who sold him the crack cocaine.
 {¶ 22} In short, based upon the testimony adduced at trial including the testimony of Detective Bline, which is set forth above, we find that any rational trier of fact could have found beyond a reasonable doubt that appellant sold the crack cocaine to Wood. We find, therefore, that the trial court did not err in overruling appellant's Crim. R. 29 motion with respect to the charge of trafficking in crack cocaine.
 {¶ 23} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 24} Appellant, in his second assignment of error, argues that the trial court erred in failing to grant a mistrial due to prosecutorial misconduct during closing arguments. We disagree.
 {¶ 25} The grant or denial of a mistrial rests in the sound discretion of the trial court. State v. Garner,74 Ohio St.3d 49, 656 N.E.2d 623, 1995-Ohio-168. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 26} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160,165, 555 N.E.2d 293, certiorari denied (1990),498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168,106 S.Ct. 2464, 91 L.Ed.2d 144.
 {¶ 27} Appellant, in the case sub judice, specifically takes issue with the following statements made by the prosecutor during closing arguments:
 {¶ 28} "(Prosecutor Mallet) It appears that the defendant has been using several different defense strategies. Yesterday you heard that Preston Scott may testify. That alludes me to believe that that might be the not me defense: If it's not me, it's someone else. Well, Mr. Scott wasn't here." Transcript at 275-276.
 {¶ 29} However, we find that the trial court did not err in declining to declare a mistrial based on such comments. We concur with appellee that the above comment by the prosecutor was short in duration.[2] Furthermore, after defense counsel objected to the above comments by the prosecution, the trial court sustained the objection in part and ordered the jury to "disregard the last statement of the prosecutor." Transcript at 276. Thus, a curative instruction was provided by the trial court. Finally, we cannot say that appellant was materially prejudiced by the alleged prosecutorial misconduct based upon the overwhelming evidence of appellant's guilt as is set forth above.
 {¶ 30} Appellant's second assignment of error is, therefore, overruled.
 {¶ 31} Accordingly, the judgment of the Licking County Court of Common Pleas is affirmed.
By: Edwards, J. Gwin, P.J. and Hoffman, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] The trial court dismissed the forfeiture specification.
[2] Appellee, in its brief, concedes that "the reference to the Appellant's defense strategy, specifically asking about a potential witness, was improper."